**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

GEORGIK MINASSI,

          Petitioner,

     v.

KRISTI NOEM, et al.,

          Respondents.

No. 5:26-cv-00723-RGK-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I.   SUMMARY

Petitioner Georgik Minassi ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently detained in the Adelanto ICE Processing Center, within the Central District of California. Petitioner is a citizen of Iran, who has a final order of removal from December 4, 2013. (Dkt. No. 1 at 2, 6.) Immigration authorities did not effectuate that removal order—that is, to return Petitioner to Iran or a third country—at the time it was entered. *Id.* at 9. Since his release—from June 4, 2014, until he was taken into custody February 3, 2026—Petitioner has remained at liberty and complied with all check-ins with Immigration and Customs Enforcement ("ICE"). The record does not reflect that he had any issues while on supervision, or that he violated the terms of that supervision, over the past twelve years.

In this habeas action, Petitioner claims that his re-detention—without any notice or opportunity to be heard—violates due process and that his ongoing detention violates 8 U.S.C. § 1231(a)(3), (6) because his removal did not occur during the initial 90-day removal period and is not "reasonably foreseeable." (Dkt. No. 1 at 3, 8, 11.)

Following several recent decisions in this District, the Court finds that Petitioner's sudden detention—without any meaningful pre-or post-deprivation process—is not authorized by § 1231 and violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain him.

## II.  FACTS AND PROCEDURAL HISTORY

Petitioner is a citizen of Iran, currently detained in the Adelanto ICE Processing Center, who has a final order of removal from December 4, 2013. (Dkt. No. 1 at 2, 9.) Immigration authorities did not effectuate that removal order—that is, to return Petitioner to Iran or a third country—at the time it was entered. *Id*. The 90-day removal period elapsed, and Petitioner was released on an Order of Supervision ("OSUP"). (Dkt. No. 1 at 9.) Since his release—from June 4, 2014, until he was taken into custody February 3, 2026—Petitioner has remained at liberty and complied with all check-ins with Immigration and Customs Enforcement ("ICE"). *Id*. The record does not reflect that he had any issues while on supervision, or that he violated the terms of that supervision, over the past twelve years. (Dkt. No. 1.) Petitioner has resided in the United States since March 2001 and resided in Los Angeles before being detained. (Dkt. No. 1 at 9.) He has been married to a U.S. citizen for 37 years and has two U.S. citizen children. *Id*.

2

On February 3, 2026, Petitioner was arrested and taken into ICE custody when he reported as instructed for his regular OSUP check-in. (Dkt. No. 1 at 2.) At the time he was re-detained on February 3, 2026, ICE provided him with the Notice of Revocation of Release and Alien Informal Interview pursuant to 8 C.F.R. section 241.4(1); 8 C.F.R. section 241.3(i). (Dkt. No. 8, Exs. 1-2.) The reason checked on the Notice of Revocation of Release was "ICE is seeking a travel document to effect your expeditious removal to IRAN or third country." *Id*. Additionally, the Notice indicated that an informal interview would be afforded the same day, on February 3, 2026. *Id*.

Petitioner filed this Petition on February 16, 2026, shortly after he was detained. (Dkt. No. 1.) He alleges two causes of action: (1) his detention violates the INA section 241 (codified in 8 U.S.C. § 1231) because he was not removed within 90 days and (2) his re-detention violates his Due Process Clause of the Fifth Amendment. (Dkt. No. 1 at 10–11.) When he initiated this action, Petitioner also applied for a temporary restraining order. (Dkt. Nos. 1, 3.) The District Court denied his application. (Dkt. No. 5.) Petitioner requests that the Court issue an order requiring his release and preventing his re-detention, absent a bond redetermination hearing to determine whether he is a flight risk or danger to others. (Dkt. No. 1 at 11–12.) Respondents filed their Answer on February 27, 2026 (Dkt. No. 8) and Petitioner filed his Reply on March 4, 2026 (Dkt. No. 9). The Court set a hearing for both parties on March 20, 2026, and ordered supplemental briefing regarding efforts by the government to send Petitioner to Iran or a third country. (Dkt. No. 10.) The Respondents submitted additional briefing but did not provide additional facts related to efforts to send the Petitioner to Iran or to a third country. (Dkt. No. 12.) The matter is thus fully briefed. Both parties have consented to proceed before the Magistrate Judge. (Dkt. No. 16.)

III.  **DISCUSSION**

The Petitioner makes two closely related claims focused on his detention—(1) his ongoing re-detention violates 8 U.S.C. § 1231, because he was released after the 90-day removal period and the government has not shown that his removal is reasonably foreseeable; (2) his re-detention and revocation of OSUP without notice or a meaningful opportunity to be heard, violates due process. (Dkt. No. 1 at 10–11.) Respondents argue Petitioner has not been detained longer than six-months and cannot show there is no significant likelihood of removal in the reasonably foreseeable future; DHS properly revoked Petitioners OSUP; 8 U.S.C. § 1252(g) forecloses jurisdiction; and Petitioner is not due a bond hearing pursuant to 8 U.S.C. § 1226(a) because Petitioner has a final removal order. The Court will address each in turn.

**A.  The Court Has Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims. Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301-03 (2001)). Petitioner here advances a paradigmatic habeas claim— that his confinement by federal immigration authorities violates the Due Process Clause and a federal law.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through one provision of the immigration laws, 8 U.S.C. § 1252(g). (Dkt. No. 8 at 9–10.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with

4

Supreme Court and Ninth Circuit authority. *See, e.g., Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1–2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872, at *2–3 (C.D. Cal. Nov. 12, 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that "to the extent Petitioner's claims challenge these decisions" the Court does not have jurisdiction. (Dkt. No. 8 at 10.) But the Supreme Court has refused to "interpret [§ 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed § 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to commence proceedings, adjudicate cases, or execute removal orders. As such, § 1252(g) does not apply, and the Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 habeas corpus proceedings are

available as a forum for statutory and constitutional challenges to post-removal period detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B. Under *Zadvydas*, Petitioner's Detention Violates 8 U.S.C. § 1231.

The Court begins its analysis by addressing Petitioner's first cause of action, which alleges a violation of 8 U.S.C. § 1231. Petitioner is subject to a final removal order. (Dkt. No. 1 at 9.) His detention is therefore governed by 8 U.S.C. § 1231(a). Under that statute, noncitizens subject to administratively final orders of removal must be detained for 90 days to effectuate their removal. *See* 8 U.S.C. § 1231(a)(2). Once that mandatory detention period passes, however, the government has discretion to either detain certain inadmissible or criminal noncitizens beyond that initial removal period or release them subject to an OSUP. *See id.* § 1231(a)(6); *accord Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578–79 (2022) ("After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'").

The Supreme Court has construed § 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690–96. The Court instead interpreted § 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court finds that Petitioner's detention is not authorized by § 1231(a)(6) because his removal is not

"reasonably foreseeable." The Supreme Court specifically held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

1. *Zadvydas does not bar a challenge of detention before six months.*

First, the Court rejects Respondents' contention that Petitioner fails to state a claim because "he has yet been detained over the six-months of presumptively reasonable removal order detention period" required by *Zadvydas*. (Dkt. No. 8 at 2.) *Zadvydas* does not bar a noncitizen from challenging detention before the end of the six-month period. Its core holding is that § 1231(a)(6) does not authorize detention *beyond* the initial 90-day removal period when removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 699–700. The six-month benchmark is a "presumptively reasonable period of detention" adopted "for the sake of uniform administration," not a rigid prerequisite. *Id*. at 700–01. The Supreme Court in *Zadvydas* outlined a "guide" for approaching these detention challenges, 533 U.S. at 700–01, not a prohibition on claims challenging detention less than six months. *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018). *See Andreasian v. Noem, et al.*, No. 5:26-CV-00995-CV (DTB), 2026 WL 789954, at *3 (C.D. Cal. Mar. 16, 2026) (citation modified) (noting District courts in the Ninth Circuit generally treat this as a guide, not a bar); *see also Clark v. Martinez*, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring) ("[T]he 6-month presumption . . . is just that— a presumption."). The Court therefore rejects Respondents' argument that Petitioner cannot bring a *Zadvydas* claim merely because his detention has not yet reached six months. *Andreasian*, 2026 WL 789954, at *3. "Courts have granted *Zadvydas* relief before six months when the petitioner provides clear evidence showing that removal is not reasonably foreseeable." *Id.*

If an individual subject to a removal order is not removed during the removal period, he may be detained beyond the removal period or may be

7

released subject to supervision. 8 U.S.C. § 1231(a)(6), (a)(3). A noncitizen may not, however, be detained indefinitely under § 1231(a) for the purpose of effectuating removal; he must be released from detention once it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 690–92 (interpreting 8 U.S.C. § 1231(a)(6)); *see also* 8 C.F.R. § 241.13(g)(1) (requiring release on conditions once the government has concluded that removal is not significantly likely in the reasonably foreseeable future).

The Ninth Circuit has held that a bid for habeas relief is appropriate where one is "stuck in a 'removable-but-unremovable limbo . . . because the country will not accept him.'" *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

Petitioner's 90-day removal period elapsed after his December 2013 removal order was final, and he was released on an OSUP where he remained for approximately 12 years without incident. (Dkt. No. 1 at 9.) Because the Petitioner was not removed during the 90-day removal period and was released on OSUP, the Government may not re-detain him without a showing that there is a significant likelihood of removal in the reasonably foreseeable future. The Court now looks to whether there is no significant likelihood of removal in the reasonably foreseeable future and whether the Petitioner is stuck in a "removable-but-unremovable limbo" given the current climate with Iran and the United States. Thus, a bid for habeas relief is appropriate for him at this stage.

*2. There is no likelihood of removal in the reasonably foreseeable future*

As stated in *Zadvydas*, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. And "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with

8

evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The sole reason listed on Petitioner's Notice of Revocation of release is "removal to IRAN or a third country." (Dkt. No. 8-1.) At the March 20, 2026, hearing, Respondents affirmed to the Court that they intend to remove Petitioner to Iran or to a third country. (Dkt. Nos. 8, 12.)

The Court "may take judicial notice on its own" and "at any stage of the proceeding." Fed. R. Evid. 201. This Court may take judicial notice of "court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). *See U.S. ex rel. Robinson Rancheria Citizens Council v. Bornea, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (finding courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). Accordingly, the Court takes judicial notice of the current conflict/war between the United States and Iran that began on February 28, 2026—a day after Respondents Answer was filed on February 27, 2026.[1] (Dkt. No. 8.).

i.    Petitioner's Burden

Petitioner has satisfied his burden to show there is no significant likelihood of removal in the reasonably foreseeable future. First, as Petitioner points out, the United States has no formal diplomatic ties with Iran. (Dkt. No. 9

---

[1] The United States began a conflict/war with Iran on February 28, 2026. "Iran and the United States appeared at an impasse Thursday, hardening their positions over ceasefire talks and setting the stage for another potential escalation in the Middle East war as thousands more U.S. troops neared the region." Jon Gambrell, AP NEWS, *Iran and the US harden their positions over talks to end the nearly month-old war*, https://apnews.com/article/iran-us-israel-trump-lebanon-march-26-2026-08584480cef5cc50e525bf21602104fc; *see* Jessie Yeung, Issy Ronald, *What we know on day 31 of the US and Israel's war with Iran: Trump threatens escalation if no deal reached,* CNN (March 30, 2026) (noting that as of day 31 of the war "Iranian Foreign Ministry spokesperson Esmaeil Baghaei said there are currently no direct negotiations between the US and Iran.").

at 3.) The Government has no response to this in their supplemental response. (Dkt. No. 12.) It is also certainly true that Iran has historically been uncooperative in efforts by the United States to repatriate its citizen. *See Kamyab v. Bondi*, C25-389-RSL-MLP, 2025 WL 2918081, at *2 (W.D. Wash. Aug. 5, 2025) (citing ICE information sheet reflecting that Iran is an "uncooperative" country, one that does not facilitate the return of its nationals). Second, Petitioner points to a news article discussing the start of the conflict/war on February 28, 2026, as a "large-scale offensive against Iran after weeks of buildup and threats from President Trump." (Dkt No. 9 at 2.) Further noting that the "ongoing conflict between Iran and the United States . . . is in its early stages." (Dkt. No. 9 at 3.) An article by ABC news on March 24, 2026, notes that the Pentagon has refused to give a "definitive time frame" for the end of the Iran war. Rudi Maxwell et al., *Iran war updates: No 'definitive time frame' to end Iran war, Pentagon to seek funds from Congress—as it happened,* ABC NEWS, (March 24, 2026), https://www.abc.net.au/news/2026-03-19/iran-israel-us-war-live-updates-march-19/106471026. As such, it is unlikely that anyone will be removed to a country deemed "uncooperative," with which the United States has no diplomatic relations and is currently at war.

ii.    Respondents' Burden

The burden thus shifts to Respondents to supply evidence sufficient to rebut Petitioner's showing. Despite being given an opportunity to supplement the record, the evidence Respondents have put before the Court does not satisfy that burden. Respondents Answer points to one BBC article from September 30, 2025, indicating there was an "agreement for making removals to Iran, and the removals taking place." (Dkt. No. 8 at 3.) That article, from months before the war began, only discusses the expectation of deportation of Iranian nationals to Iran. Further, the article even notes "[i]t is a rare instance of cooperation between Iran and the US, who do not have formal diplomatic ties." *Id*. The

Respondents have provided no evidence of steps taken since the conflict with Iran of the likelihood of removal in the reasonably foreseeable future. (Dkt. No. 12). Looking at the totality of the record here, Respondents have not shown the actual efforts since the war to remove Petitioner to Iran—what process has been done and what stage it is at now. Consequently, the Court has been given no reason to believe that removal to Iran is still a possibility given the ongoing war. The Respondents have also not provided any other evidence of specifics of steps taken, including procuring travel documents from any other third country. At the status conference hearing on March 20, 2026, the Court asked Respondents to provide evidence of what efforts have been made to deport Petitioner to a third country. Respondents provided no additional information or documents. (Dkt. No. 12.) As such, it is also not foreseeable to send Petitioner to another country.

For all these reasons, the Court concludes that Respondents have not rebutted Petitioner's showing that there is not a significantly likelihood that Petitioner will be removed in the reasonably foreseeable future to Iran or another country. *Hambarsonpour v. Bondi*, No. C25-1802-RSM, 2025 WL 3251155, at *3 (W.D. Wash. Nov. 21, 2025) (where government's showing is ultimately nothing more than continued assurances that travel documents should be obtained soon, the government does not carry its burden, and habeas relief should be granted); *Kamyab*, 2025 WL 2917522, at *1 (approving report and recommendation in October 2025 granting habeas relief to similar petitioner from Iran); *Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *4 (S.D. Cal. Nov. 10, 2025) (granting habeas relief and finding that merely submitting a request for travel documents, paired with assurances that ICE has succeeded in procuring travel documents

11

for some individuals from Vietnam, does not itself make petitioner's removal reasonably likely).

The Court concludes that the Petitioner's removal is not likely to occur in the reasonably foreseeable future and therefore Petitioner is to be releases subject to conditions that existed prior to his detention.

**C. Petitioner is Entitled to Notice and an Opportunity to be Heard Prior to Re-detention.**

Petitioner also claims that his re-detention violates due process because he was re-detained without notice or a pre-deprivation hearing.

With respect to the procedural violations Petitioner has alleged, courts in this Circuit have flagged the due process ramifications of the failure to provide appropriate process to a noncitizen whose order of supervision is revoked. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (granting habeas petition and collecting cases concerning revocation of orders of supervision without notice and an informal interview).

The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their

12

liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

The Ninth Circuit in *Prieto-Romero v. Clark* reaffirmed what that the Supreme Court recognized that even if "continued detention is permitted by statute . . . due process requires 'adequate procedural protections' to ensure that government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Prieto-Romero,* 534 F.3d at 1065 (citing *Zadvydas*, 533 U.S. at 690–91.) There is distinction between "whether detention that is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person." *Id.*

ICE may revoke a noncitizen's release on an OSUP under § 1231. *See* 8 C.F.R. §§ 241.4(l), 241.13(i). ICE may revoke release when a noncitizen violates a condition of their OSUP, "on account of changed circumstances, [if ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," or certain officials may exercise their discretion to revoke release. *Id.* §§ 241.4(l)(1), 241.4(l)(2), 241.13(i)(1), 241.13(i)(2). Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id.* § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation," *id.* § 241.4(l)(1), and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i)(3).

The Petitioner alleges that he was re-detained without any notice of the reason for his revocation when he was detained and that he was not provided an initial interview in connection with his revocation. (Dkt. No. 1 at 3.) Respondents provide documentation to refute this argument including the Notice of Revocation of Release and Alien Informal Interview pursuant to

13

8 C.F.R. section 241.4(1); 8 C.F.R. section 241.3(i). (Dkt. No. 8, Exs. 1-2). On the signature page of the Notice to Alien of Revocation of Release, the detainee signature line says, "refused to sign" and is not dated. *Id.* It is unclear if Petitioner was provided with notice. However, assuming notice was given on the day he was detained, the bigger issue is that both the Notice and Informal Interview took place on the same day that Petitioner was re-detained, on February 3, 2026. (*Id.*) Petitioner did not have a meaningful opportunity to address the reason for revocation of his release and his detention.

Respondent's Answer indicates that Petitioner was arrested, serviced with the Notice of Revocation of Release and given an Informal Interview all on the same day, February 3, 2026. (Dkt. No. 8 Exs. 1, 2.) At the March 20, 2026, hearing, Petitioner's counsel noted that Notice and the Informal Interview were provided "when he was cuffed and taken in." (Status Conference, Dkt. No. 10.) Although the notice may be given on the same day as the detention, "[w]hen a petitioner is provided notice on the same day that their informal interview is conducted, they are substantially prejudiced in preparing competent arguments and/or gathering any supporting documents to regain their freedom. What results from such a situation is a deprivation of any 'meaningful opportunity' for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom." *Saengphet v. Noem*, No. 3:25-CV-2909-JES-BLM, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025); *see Hagos v. Noem*, No. 3:26-CV-150-JES-DEB, 2026 WL 202873, at *4 (S.D. Cal. Jan. 27, 2026) (same); *see also Mathews*, 424 U.S. at 335, 96 S.Ct. 893. That is exactly what happened here.

Here, Respondents provided Petitioner with notice of its justification for revoking his leave, which was given on the same day that it conducted his

14

informal interview.[2] As a result, when a petitioner is provided notice revoking OSUP on the same day that their informal interview is conducted, they are substantially prejudiced in preparing competent arguments and/or gathering any supporting documents to regain their freedom. What results from such a situation is a deprivation of any "meaningful opportunity" for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom. *See Mathews*, 424 U.S. at 335; *Saengphet v. Noem*, No. 3:25-CV-2909-JES-BLM, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025).

Respondents suggest that release is not the appropriate remedy for these regulatory violations. (Dkt. No. 8 at 8.) The Court notes that, in similar cases in which noncitizens were detained without the notice or interview required by the regulations, courts have rejected this position and ordered noncitizens' release to restore the status quo prior to their unlawful detentions. *V.K. v. Noem*, No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026); *Kiwana v. LaRose*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025). Similarly, here, Petitioner was not provided a meaningful opportunity to challenge his re-detention. Therefore, it violated his due process.

Regardless, here, the Court has already found that Petitioner is entitled to release because his detention is not authorized by statute under *Zadvydas*. The question now is what process is due before the Government may re-detain

---

[2] The Court recognizes that the regulation also requires the Service to "conduct an initial informal interview *promptly* after [the noncitizen's] return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13 (emphasis added). However, due process is not satisfied by an informal interview if the noncitizen is not afforded a meaningful opportunity to prepare evidence or information to contest the continued detention.

15

him again in the future. Given that the Government has already re-detained Petitioner once without proper process, it is appropriate to prevent the Government from re-detaining him again absent notice and interview with meaningful time between the two. Multiple courts in this District have found that due process requires pre-deprivation notice and a hearing where, as here, the Government seeks to re-detain someone who has been living at liberty without incident for years. *See, e.g., M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO preventing the petitioner's re-detention absent pre-deprivation notice and a hearing); *Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK, Dkt. 12 (C.D. Cal. Nov. 6, 2025) (same); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition and ordering same relief).

As in these cases, the *Mathews v. Eldridge*, 423 U.S. 319 (1976) framework supports Petitioner's claim that that Government may only re-detain him after affording him meaningful pre-deprivation process—including notice and a hearing at which he can contest whether his re-detention is necessary—separate and apart from any procedures required by the regulations. Petitioner has a strong liberty interest in remaining free from confinement.  Given Petitioner's ties to the community and having no criminal record during his 12 years of supervised release, the Petitioner has a liberty interest in not being detained.  There is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore orders that the Government cannot re-detain

Petitioner absent notice and a pre-deprivation hearing at which the Government must justify the need to detain him.

### D. Petitioners Remaining Claims

Because the Court concludes that Petitioner is entitled to release on statutory and due process grounds, it declines to address his alternative arguments including whether he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release along with his personal belongings, subject to appropriate conditions of supervision that existed prior to his detention, and preventing his re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine him; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least 20 days of notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:  April 1, 2026

_____

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

17